# UNITED STATES BANKRUPTCY COURT
# WESTERN DISTRICT OF TEXAS
# WACO DIVISION

| | | |
|---|---|---|
| In re:<br><br>LITTLE RIVER HEALTHCARE HOLDINGS, LLC, *et al.*<br>　　　　　Debtors<br><br>―――――――――――――――――――<br><br>James Studensky, Chapter 7 Trustee for Little River Healthcare Holdings, LLC, et al.,<br><br>　　　　　Plaintiff<br>　　v.<br>UnitedHealthcare Insurance Company, United Healthcare of Texas, Inc., UnitedHealthcare Benefits of Texas, Inc., UnitedHealthcare Community Plan of Texas, L.L.C., *et al.*<br><br>　　　　　Defendants | §<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§ | Chapter 7<br><br>Case No. 18-60526-rbk<br>(Jointly Administered)<br><br>Adv. Proc. No. 20-06093-rbk |

## TRUSTEE'S PROPOSED FINDINGS OF FACT AND CONCLUSIONS OF LAW

COMES NOW, Plaintiff James Studensky, the duly appointed chapter 7 trustee of Little River (the "Trustee") and, pursuant to Local Rule 7016 of the Court, hereby submits his Proposed Findings of Fact and Conclusions of Law:

### FINDINGS OF FACT

1.　On July 24, 2018, Rockdale Blackhawk, LLC d/b/a/ as Little River Healthcare ("Little River") and various affiliated entities filed for Chapter 11 bankruptcy protection in the United States Bankruptcy Court for the Western District of Texas, jointly administered under the above styled and named main case.

2.　The jointly administered Chapter 11 proceeding was converted to a Chapter 7 proceeding on December 7, 2018.

3. James Studensky is the duly appointed and serving Chapter 7 trustee for the bankruptcy estate of Little River.

4. Little River was a Central Texas-based healthcare medical network provider. Little River operated rural hospitals, including the Rockdale critical access hospital in Milam County, medical clinics, and had a physician/provider network.

5. In 2014, Little River and United entered into a contract for the provision of healthcare services to United members (the "Facility Participation Agreement" or the "2014 Contract"), effective October 1, 2014. The contract established Little River as an "in network" provider for United members.

6. The 2014 Contract was a percentage of charge contract for laboratory services, meaning Little River was to be reimbursed based on an agreed percentage of the eligible charge for the service rather than on a fixed-fee schedule.

7. As part of its growth, Little River began to extend its provision of laboratory services from its owned and affiliated locations to non-affiliated physicians' offices by providing Little River-employed phlebotomists at such locations to collect patient specimens.

8. The phlebotomist would register each patient as an outpatient of the hospital, have the patient sign a consent form identifying Little River, prepare the patient for collection, collect the specimen, prepare the specimen for processing, and mark the chain of custody. In the consent, the patient acknowledged being a Little River patient and assigned his or her benefits over to Little River. The testing would then be performed at the Rockdale Hospital's laboratory facility or sent out to a reference lab.

9. Hospitals often utilize third-party laboratories, known as "reference labs," to perform laboratory tests that the hospital itself is unable to perform. For example, beginning in

2015, Little River used Boston Heart and True Health Diagnostics as reference labs to conduct advanced lipid testing on Little River patients.

10. Historically, United had consistently paid for all services performed on behalf of Little River by third-party reference laboratories.

11. Through Little River-employed physicians and other doctors who wanted to order such testing, like advanced lipid and toxicology, Little River's laboratory volume grew dramatically. As volume grew, Little River began to invest in its own hospital laboratory so that it could provide much of the testing it had been sending out to reference labs at the Rockdale Hospital instead.

12. In 2016, Little River entered into a laboratory management agreement and equipment lease with Outreach Management Solutions to help grow its own laboratory capabilities.

13. By the end of 2016, Little River was able to perform the majority of its testing with its expanded on-site laboratory at the Rockdale Hospital. The individuals who worked in the outreach lab were Little River employees.

14. Because of Little River's increased laboratory billings, United started to scrutinize Little River's laboratory claims.

15. In June 2016, United began a formal investigation on Little River's laboratory claims, and subsequently placed a soft deny flag on certain laboratory claims.

[redacted]

3

██████████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████████

████████████████████████████

18. On March 29, 2017, United sent Little River a notice of non-renewal of the Facility Participation Agreement.

19. On May 3, 2017, United formally placed Little River on pre-payment review. Under pre-payment review, United would not pay claims associated with certain codes until it reviewed the underlying medical records from the provider in support.

20. Under pressure from United, the Facility Participation Agreement was amended effective October 1, 2017 (the "Contract Amendment"). The contract amendment eliminated the percent of charge pricing structure and implemented a reduced fee schedule.

21. United adopted a new non-patient laboratory reimbursement policy in 2018 to respond to specifically address hospital laboratory billing.

22. The laboratory services at issue were performed upon orders made by physicians or other qualified providers, the specimens were drawn from United members, the testing was performed on the specimens, and the results were provided to the ordering providers and patients.

23. United was obligated by the FPA (and Texas law) to make prompt payment to Little River ████████████████████████████████████████████████████

24. Prior to Little River's failure, it rendered thousands of laboratory services to United's insureds that went unpaid or underpaid. All told, United failed and refused to pay millions of dollars due under the FPA, contrary to its contractual obligations.

## CONCLUSIONS OF LAW

4

1. The Court has jurisdiction, and this matter is a core proceeding over which this Court can enter a final order.

2. The Trustee has consented to entry of a final order by this Court.

3. Venue in this Court is proper pursuant to 28 U.S.C. § 1409.

**Breach of contract**

4. ███████████████████████████████████████████
███████████████████████████████████████████
███████████████████████████████████████████
███████████████████████████████████████████
███████████████████████████████████████████
██████████████████████████
   ▪ ███████████████████████████████████████
███████████████████████████████████████████
███████████████████████████████████████████
███████████████████████████████████████████
███████████████████████████████████████████
█████████████████████████████████
   ▪ ███████████████████████████████████████
███████████████████████████████████████████
███████████████████████████████████████████
█████████████████████████████
   ▪ ███████████████████████████████████████

███████████████████████████████████

███████████████

9. United's reliance on various "administrative guides" to alter those obligations is unsupported by the pertinent contract language and is contrary to Texas law. The administrative guides were not effectively incorporated into the FPA.

10. The 2015 Administrative Guide provisions under the subheading "Pass-through billing/CLIA requirements/reimbursement policy" applied only to a "physician, practitioner, or medical group," not hospital facilities like Little River. *Mission Toxicology, LLC v. Unitedhealthcare Ins. Co.*, 499 F. Supp. 3d 350, 365 (W.D. Tex. 2020). This means that while the 2015 Administrative Guide's prohibition on "pass-through billing" restricted individual providers, it did not prohibit a hospital from billing for reference lab services. *Id.*

11. The doctrine of collateral estoppel precludes United's interpretation of the FPA in this case, because it actually litigated that interpretation of its form contract provisions that were identical in relevant respects, and the interpretation it advanced there was resolved against it in a final adjudication in *Mission Toxicology*.

12. Between 2016 and 2018, Little River performed covered services that United underpaid or failed to pay at the contractually agreed rates for commercial claims, causing damages to Little River in the amount United should have paid under the FPA's terms.

**United's Defenses to Breach of Contract**

13. Appeal of claim denials is not a condition precedent for bringing suit. Even if appeals were a condition precedent, the Trustee has shown that any appeals were futile based on United's articulated strategy to avoid the payment of all laboratory claims by Little River.

14. United failed to plead with particularity that any cited provision of the FPA

requiring an "appeal" was a condition precedent to bringing suit, and therefore it is precluded from relying on that defense in this matter.

15. United failed to prove prior material breaches that would excuse United's performance.

16. United failed to plead with particularity that any cited provision of the FPA allegedly breached was a condition precedent to bringing suit, and therefore it is precluded from relying on that defense in this matter.

17. Any coding errors or misapplication of modifiers does not alleviate United's payment obligations.

18. The provisions related to kickbacks in the administrative guides were not incorporated into the FPA and did not alleviate United's payment obligations. But even if the administrative guides created a binding obligation, the subsection United relies on is limited in applicability to "all participating physicians and health care professionals," not hospital facilities like Little River.

19. The provisions in the administrative guides related to kickbacks also do not establish nonpayment of claims as a remedy for their breach. Instead, even if those provisions were part of the contract, and even if they were breached, United's remedy only was to move Little River to a decreased fee schedule or terminate the FPA. Until the FPA was amended or terminated, United was obligated to continue making payment to Little River in the amounts due under the 2014 FPA terms for so long as services were rendered.

20. United breached its contract with Little River by failing to pay for laboratory services provided to United members for which it is liable to Little River for damages in the amount of _____.

**Texas Prompt Pay Laws**

21. The Texas Insurance Code contains detailed requirements for the proper submission of eligible healthcare claims and their subsequent processing by insurance companies. Tex. Ins. Code § 843.336 et seq. (for HMOs); Tex. Ins. Code § 1301.101 et seq. (for PPOs) (collectively the "Texas Prompt Pay Laws"). The Texas Prompt Pay Laws statutory and regulatory requirements are non-waivable.

22. Under the Prompt Pay Laws, insurers must pay, deny with written notice, or partially pay and partially deny electronic clean claims within 30 days of receipt. Tex. Ins. Code § 1301.103, § 843.338.

23. The claims Little River submitted to United were clean claims within the meaning of the Texas Prompt Pay Laws. Tex. Ins. Code §§ 843.336(c); 1301.131(b), (d); *see also* 28 TAC § 21.2803.

24. If the insurer needs additional information to determine whether it is liable for a claim, such as a patient's medical records, it may request additional information from the treating provider within 30 days of receiving the claim and must act on the claim within 15 days of receiving the information. 28 TAC §§ 21.2804.

25. If the claim is not properly adjudicated within the later of 30 days of filing or 15 days of the insurer's receipt of medical records, the insurer must pay statutory penalties. Tex. Ins. Code §§ 843.342, 1301.137; 28 TAC §§ 21.2815.

26. An insurer that wishes to audit a claim must notify the provider in writing and pay the provider 100% of the contracted rate. 28 TAC §§ 21.2802, 21.2807; Tex. Ins. Code §§ 843.338, 843.346, 1301.103. Pursuant to the Prompt Payment Laws audit provisions, the insurer has 180

days to investigate the claim. Tex. Ins. Code §§ 843.340, 1301.105.

27. Little River may only recover under the Texas Prompt Payment Laws for fully insured claims (i.e., not self-funded plans). *See* Tex. Ins. Code § 1301.0041.

28. As a result of United's failure to pay Little River's claims in accordance with the services provided to United Members, Little River is entitled to penalties and interest as set forth in Tex. Ins. Code §§ 843.342 and 1301.137 and 28 TAC § 21.2815 and attorneys' fees and costs pursuant to Tex. Ins. Code §§ 843.343, 1301.108 and 28 Tex. Ins. Code § 21.2817.

29. United's adjudication of Little River's claims violated the Texas Prompt Pay Laws, for which it is liable for penalties and interest in the amount of _____.

**Unfair Claims Settlement Act**

30. The Trustee has standing to assert these claims as United Members assigned their rights, specifically including the right to pursue remedies necessary in pursuing unpaid claims, under their policies with United to Little River.

31. On numerous occasions, Little River gave notice to United of the claims forming the basis of this cause of action.

32. United's acts and practices have violated Tex. Ins. Code § 542.058 by not timely paying Little River's claims, as discussed above. United violated this provision of the Texas Insurance Code when it refused to reimburse Little River for services that United did not dispute Little River provided to United Members.

33. The Trustee is entitled to damages as a direct result of United's violation of Tex. Ins. Code §§ 542.057 and 542.058.

34. The Trustee is entitled to recover additional statutory damages of 18% of the amount of its damages. Tex. Ins. Code § 542.060(a). This totals _____.

35. The Trustee is entitled to recover its reasonable and necessary attorneys' fees under Tex. Ins. Code § 542.060.

**Declaratory Judgment**

36. Little River and United entered into a valid contract. By law, United was to pay clean claims within forty-five (45) days of receipt of those claims in non-electronic format and thirty (30) days of receipt of those claims that are electronically submitted.

37. Little River performed its contractual obligations including, but not limited to, providing and making available valuable medical services, including laboratory services, to United Members pursuant to the terms of the Contract.

38. United breached the FPA by: failing to pay clean claims within the time periods set out in the FPA; failing to provide advance notice before implementing a policy change that resulted in lower payments to providers; improperly denying hundreds of claims; failing to provide required notice before offsetting the amount of the alleged overpayment or erroneous payment against other monies due to Little River; continuing to deny and failing to reimburse Little River for claims submitted by Little River for laboratory services provided to United Members; and failing to produce the relevant documentation or state the basis regarding United's denial of the laboratory claims within the time period required under Texas law.

39. United violated Tex. Ins. Code §§ 843.321 and 1301.136(a)(2) by failing to provide Little River with documentation supporting any United change of payment methodology with respect to hospital usage of reference laboratories within 30 days after receipt of Little River's request.

40. United violated Texas' Prompt Pay Statute, Tex. Ins. Code §§ 843.336 et seq. and 1301.101 et seq. by failing to pay clean claims within forty-five (45) days of receipt of those claims

in non-electronic format and thirty (30) days of receipt of those claims that are electronically submitted.

41. United engaged in unfair claim settlement practices in violation of Tex. Ins. Code § 542.058 by not timely paying Little River's claims after wrongfully rejecting these claims and by refusing to reimburse Little River for services that United did not dispute Little River provided.

**United's Proofs of Claim**

42. The Trustee's objection to United's Proofs of Claim in this matter is sustained and United's claims are disallowed in their entirety.

**Attorneys' Fees**

43. The Trustee is entitled to an award of attorneys' fees in an amount to be determined post-judgment pursuant to the Local Bankruptcy Rules of the Western District of Texas.

Respectfully submitted,

*/s/ Matthew Powers*
**GRAVES, DOUGHERTY, HEARON & MOODY, P.C.**
Matthew C. Powers (TX Bar No. 24046650)
William G. Christian (TX Bar No. 00793505)
Marianne W. Nitsch (TX Bar No. 24098182)
Brian T. Cumings (TX Bar No. 24082882)
401 Congress Avenue, Suite 2700
Austin, TX 78701
Telephone: (512) 480-5626
Facsimile: (512) 536-9926
Email: bcumings@gdhm.com
Email: mpowers@gdhm.com
Email: wchristian@gdhm.com
Email: mnitsch@gdhm.com
*Attorneys for James Studensky, Chapter 7 Trustee*

## CERTIFICATE OF SERVICE

I hereby certify that on June 3, 2024, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system and sent the filing via email to the following counsel of record:

Eric S. Goldstein
Shipman & Goodwin LLP
One Constitution Plaza
Hartford, CT 06103
(860) 251-5000
egoldstein@goodwin.com

Jeffrey S. Gleason
Jamie R. Kurtz
Gregory S. Voshell
Marcus A. Guith
Kyle D. Nelson
Robins Kaplan LLP
800 LaSalle Ave., Suite 2800
Minneapolis, MN 55402
(612) 349-8500
jgleason@robinskaplan.com
jkurtz@robinskaplan.com
gvoshell@robinskaplan.com
mguith@robinskaplan.com

4662766.v1

knelson@robinskaplan.com

*Counsel for UnitedHealthcare Insurance Company, United Healthcare of Texas, Inc., UnitedHealthcare Benefits of Texas, Inc., and UnitedHealthcare Community Plan of Texas, L.L.C.*

          */s/ Marianne Nitsch*
          Marianne W. Nitsch

4662766.v1