

UNITED STATES BANKRUPTCY COURT
WESTERN DISTRICT OF TEXAS
WACO DIVISION

| | | |
|---|---|---|
| In re: | § | Chapter 7 |
| | § | |
| LITTLE RIVER HEALTHCARE | § | Case No. 18-60526-rbk |
| HOLDINGS, LLC, *et al.* | § | (Jointly Administered) |
| Debtors | § | |
| | § | |
| ———————————————— | § | Adv. Proc. No. 20-06093-rbk |
| | § | |
| James Studensky, Chapter 7 Trustee for Little | § | |
| River Healthcare Holdings, LLC, et al., | § | |
| | § | |
| Plaintiff | § | |
| v. | § | |
| | § | |
| UnitedHealthcare Insurance Company, United | § | |
| Healthcare of Texas, Inc., UnitedHealthcare | § | |
| Benefits of Texas, Inc., UnitedHealthcare | | |
| Community Plan of Texas, L.L.C., *et al*. | | |
| | | |
| Defendants | | |

## TRUSTEE'S FIRST AMENDED PROPOSED FINDINGS OF FACT AND CONCLUSIONS OF LAW

COMES NOW, Plaintiff James Studensky, the duly appointed chapter 7 trustee of Little River (the "Trustee") and, pursuant to Local Rule 7016 of the Court, hereby submits his First Amended Proposed Findings of Fact and Conclusions of Law. Any proposed findings of fact the Court deems appropriate as conclusions of law are proposed as such, and vice versa.

### FINDINGS OF FACT

#### *Little River*

1. On July 24, 2018, Rockdale Blackhawk, LLC d/b/a/ as Little River Healthcare ("Little River") and various affiliated entities filed for Chapter 11 bankruptcy protection in the United States Bankruptcy Court for the Western District of Texas, jointly administered under the above styled and named main case.

2.     The jointly administered Chapter 11 proceeding was converted to a Chapter 7 proceeding on December 7, 2018.

3.     James Studensky is the duly appointed and serving Chapter 7 trustee for the bankruptcy estate of Little River.

4.     Little River was a central Texas-based healthcare medical network provider. Little River operated rural hospitals, including the Rockdale critical access hospital in Milam County, medical clinics, and had a physician/provider network.

5.     Little River has always operated an on-site lab in Rockdale. The on-site lab was 3,000 to 4,000 square feet and physically connected to the main hospital building. 6.10.24 RR 182:14-17, 182:22-183:6; 6.18.24 RR 1388:17-1390:8.

### *Little River's Laboratory Program*

6.     As part of its growth, Little River began to extend its provision of laboratory services from its owned and affiliated locations to non-affiliated physicians' offices by providing Little River-employed phlebotomists at such locations to collect patient specimens. 6.10.24 RR 187:23-25, 213:5-13; 6.17.24 RR 1306:10-18, 1308:1-9; PTX041; Dkt. 520 Downton Dep. 44:3-45:22, 49:2-17, 73:18-74:2.

7.     The phlebotomist would register each patient as an outpatient of the hospital, have the patient sign a consent form identifying Little River, prepare the patient for collection, collect the specimen, prepare the specimen for processing, and mark the chain of custody. Dkt. 520 Downton Dep. 46:18-47:3, 50:15-22-53:1, 54:13-55:6, 63:8-65:3, 66:18-67:3; PTX041. In the consent, the patient acknowledged receiving services from Little River. Dkt. 520 Downton Dep. 54:13-55:6; PTX126 at UNITEDHEALTH0004033. The testing would then be performed at the Rockdale Hospital's laboratory facility or sent out to a reference lab. *E.g.*, PTX126 at

4677952.v1

UNITEDHEALTH0004045.

8.      Hospitals often utilize third-party laboratories, known as "reference labs," to perform laboratory tests that the hospital itself is unable to perform.  6.10.24 RR 197:4-11; 6.18.24 RR 1399:5-1400:15; 6.12.24 RR 28:7-29:2; PTX004.   For example, beginning in 2015, Little River used Boston Heart and True Health Diagnostics as reference labs to conduct advanced lipid testing on Little River patients and billed commercial insurers like United.  Dkt. 520 Downton Dep. 40:20-41:19, 43:5-11, 14-21, 47:23-48:19.  Little River submitted such claims to United as outpatient claims.  6.20.24 RR 1619:12-19.

9.      Through Little River-employed physicians and other doctors who wanted to order such testing, like advanced lipid and toxicology, Little River's laboratory volume grew dramatically.

10.      Dr. Jonathan Sheinberg is an example of a Little River physician who routinely ordered advanced lipid testing.  Dr. Sheinberg is a preventative cardiologist who became an employee of Little River in 2014.  6.14.24 RR 978:8-19, 986:15-24.  Dr. Sheinberg ordered and continues to order advanced lipid testing for his patients to identify and treat heart disease in its early stages.  6.14.24 RR 983:16-984:15.  By volume and spend, Dr. Sheinberg was the largest ordering physician of laboratory testing for United's members through Little River.  6.14.24 1045:12-14; PTX086.  The phlebotomist who drew samples from Dr. Sheinberg's patients was a Little River employee.  6.14.24 RR 987:19-21.  Multiple examples of laboratory testing ordered by Dr. Sheinberg, including requisition forms, are found in PTX126.  *E.g.*, *id.* at UNITEDHEALTH0004033, -4159, -4331.

11.      As volume grew, Little River began to invest in its own hospital laboratory so that it could provide much of the testing it had been sending out to reference labs at the Rockdale

Hospital instead.  6.14.24 RR 989:5-990:5, 1035:18-1036:10; 6.18.24 RR 1386:21-1387:8. Similarly, Little River also invested in its cardiology program, like purchasing new CT scanners and building a cardiac catheterization lab, to improve the quality of care available in the Rockdale community.  6.14.24 RR 980:25-983:2.

12.     In May 2016, Little River engaged Outreach Management Solutions ("OMS"), a division of True Health, to help it build out its in-house testing capabilities at the Rockdale campus. 6.18.24 RR 1386:21-1387:8; DTX991; DTX032.  OMS helped Little River expand the types of tests offered at Rockdale and improve quality processes, like training and validation.  6.18.24 RR 1390:9-1391:10.  The outreach lab was co-located in the same space as Little River's existing laboratory.  6.18.24 RR 1388:17-1390:8.  The employees at the outreach lab were employed by Little River, while OMS provided oversight on technical issues.  6.18.24 RR 1392:8-1394:8.

13.     The outreach lab became operational in July 2016.  6.18.24 RR 1394:9-18.  Little River was then able to perform the majority of its testing with its expanded on-site laboratory at the Rockdale Hospital.  About 80% of lab tests sent to Little River were able to be tested in-house at the Little River outreach lab.  6.18.24 RR 1397:25-1399:4.  Tests that were not able to be performed in Rockdale were sent out to reference labs, like True Health.  6.18.24 RR 1399:5-22.

*Terms of the Facility Participation Agreement*

14.     In 2014, Little River and United entered into a contract for the provision of healthcare services to United members (the "Facility Participation Agreement" or the "2014 Contract"), effective October 1, 2014.  PTX061.

15.     The 2014 Contract was a percentage of charge contract for laboratory services, meaning Little River was to be reimbursed based on an agreed percentage of the eligible charge for the service rather than on a fixed-fee schedule.  PTX061 at UNITEDHEALTH0001768.

4

16.     The Facility Participation Agreement is based on a standard form United contract, drafted by United.  The terms are substantially the same across United's contracts with providers with any variation limited to reimbursement rate amounts and state-specific provisions.  06.13.24 RR 335:16-336:11.  It is undisputed that under United's form contract services can be provided by employees or subcontractors.  06.13.24 RR 375:10-14.

17.     The parties dispute whether Little River's use of Boston Heart and True Health was permissible and still payable as subcontractors of Little River.  The interpretation of the FPA is set out under the conclusions of law.

### *United's Actions and Inaction*

18.     Because of Little River's increased laboratory billings, United started to scrutinize Little River's laboratory claims.  By March 2016, United began having internal discussions regarding suspicions that Little River's increasing laboratory claims were an improper "billing scheme."  PTX 66; 6.14.24 RR 356:24-357:3.  United considered the issues with Little River's billing "significant" and a "big deal."  6.14.24 RR 344:9-22, 350:4-9.  United was fully aware that the increase in Little River's claim volumes could only be explained by its serving patients well beyond its facilities' local service areas.  6.20.24 RR 1622:17-23.

19.     Around the same time, United was investigating multiple rural hospitals for passthrough laboratory billing.  PTX076-77; PTX087.  To stop these outlays, United set out on a plan to put pressure on these rural facilities to move to less favorable contractual terms.  United aggressively pursued medical records, edits, and certain adjudication codes as a means to decrease usage of laboratory billings as a "gold mine."  PTX069 (United is "aggressively pursuing medical records on a prepay basis"); PTX087 (listing actions taken to date).  United also pursued re-contracting with facilities on percent of charge fee schedules and promulgating a new laboratory

reimbursement policy to address the issue. *Id.;* 6.20.24 RR 1731:6-14. United later internally described the uptick in laboratory claims as resulting from rural facilities "gam[ing] the system" and "exploit[ing] weaknesses in our contracts." PTX0116; *see also* PTX087 (listing contract language under dependencies/barriers/requests to new policy); PTX091.

20. In June 2016, United's special investigations unit began a formal investigation on Little River's laboratory claims.

21. Although the investigation ostensibly remained ongoing, by August 2016 United had already concluded Little River was involved in an improper "scheme" and was looking to place a "soft deny flag" on certain Little River codes. PTX024 ("The new schemes use a variety of intermediaries . . . ." Tobin: "Bingo!!"); PTX027.

22. From 2016 on, the percentage of total claims or denied by United increased, and by 2018, around half of all lab claims submitted by Little River to United were denied. 6.12.2024 RR 878:9-19, 880:13-19. Historically, United had consistently paid for all services performed on behalf of Little River by third-party reference laboratories. Beginning in mid-2016, United began using the code [HU] to deny some payments on the basis of usage of a reference lab. PTX107 at 6; 6.10.24 RR 195:2-21. The description for the code [HU] states that the claim was denied because services were provided by a health care provider other than the billing healthcare provider (i.e., a reference lab). PTX086.

23. In October 2016, United sent Little River a request for medical records. PTX031. The notice did not communicate any concerns to Little River over its laboratory program but instead stated it was a routine request to "verify adherence to standard billing practices." PTX031. Little River provided medical records that reflected the usage of True Health as a reference laboratory. DTX126.

4677952.v1

24.     On March 29, 2017, United sent Little River a notice of non-renewal of the Facility Participation Agreement.  PTX064.  The notice of non-renewal contains no mention of United's concerns that Little River was billing for patients outside the immediate Rockdale area and did not raise any issues of noncompliance with the FPA.  *Id.*  The notice cited the reason for nonrenewal as termination on notice under Sec. 8.2(ii) rather than material breach under 8.2(iii).  By this time, United internally concluded that Little River was engaged in impermissible pass-through billing for True Health.  PTX069 (labeling Little River among "known Texas culprits"); PTX070 ("Little River is involved in some of the lab schemes we've been dealing with."); *see also* PTX076-77 ("Believe to be doing pass through billing for True Health Diagnostics").  But to Little River, United downplayed its notice of termination as a routine mechanism to update the rate structure and gave no indication that passthrough billing was impermissible or that it constituted a breach of the parties' contract.

25.     On May 3, 2017, United formally placed a soft deny flag on Little River that resulted in pre-payment review.  PTX008; 6.20.24 RR 1640:19-23.  Under pre-payment review, United would not pay any claims associated with certain codes until it reviewed the underlying medical records from the provider in support.  6.20.24 RR 1635:14-23.  Prior to pre-payment review, United used edits and other tools to impact the adjudication of Little River's claims.  6:20.24 RR 1642:19-23.  For example, United also employed a set of "fraud, waste, and abuse" codes to implement its goal to avoid payment on laboratory claims.  PTX115.  Those codes were: [7Y], [B5], [B6], [HP], [HS], [HU], and [HW].  *Id.*

26.     Under pressure from United, the Facility Participation Agreement was amended effective October 1, 2017 (the "Contract Amendment").  PTX065.  The contract amendment eliminated the percent of charge pricing structure and implemented a reduced fee schedule.  *Id.*

7

The Contract Amendment made no changes to other terms of the FPA, other than reimbursement rates.  6.12.24 RR  400:23-441:3.

27.    United adopted a new non-patient laboratory reimbursement policy in 2018 to respond to specifically address hospital laboratory billing and give notice to providers.  PTX012; PTX088; PTX091; PTX098' PTX101; 6.20.24 RR 1632:1-:1633:5.

28.    Prior to Little River's failure, it rendered thousands of laboratory services to United's insureds that went unpaid or underpaid.  PTX086; PTX116.

***This Proceeding and United's Pleading Deficiencies: Appeals, Timeliness***

29.    The Trustee's live complaint is his Second Amended Complaint.  Dkt. 325.  In that pleading—as in prior pleadings—the Trustee pled that all conditions precedent had occurred prior to bringing suit.  *Id.* ¶ 72.

30.    Defendants' live responsive pleading is United's Answer and Affirmative Defenses to Second Amended Adversary Complaint.  Dkt. 328.  United's answer failed to identify any specific conditions that had not been satisfied.  Dkt. 328.  Paragraph 77 of United's live pleading includes a general averment that the Trustee failed to comply with contractual conditions precedent but fails to identify those conditions with any specificity.  Indeed, United's pleading fails to cite any provision in the contract setting forth the obligations it contends constitute the applicable condition precedent.

31.    United filed two proofs of claim.  Neither proof of claim mentions that United is owed money by Little River due to violations of anti-kickback laws.

32.    In discovery the Trustee asked United to identify all reasons for denial or underpayment of laboratory claims submitted by Little River.  PTX008 at Interrogatory No. 11. In response, United stated that all reasons for denials or underpayment were located in an Excel

8

file Bates-labeled UNITEDHEALTH0015608. The referenced excel file is PTX086, which contains claims data United produced in response to the Trustee's request. 6.10.24 RR 201:24-25.

33.     In PTX086, column AP shows United's internal reason code for denial followed by a text description of the code in column AQ. There is nothing in the reason codes in PTX086 where United indicates it was denying claims due to kickbacks or because no service was actually rendered (i.e., a phantom lab). 6.10.24 RR 205:5-8. The internal reason codes include limited instances where United cited missing medical records as the reason for denial. 6.10.24 RR 331:23-332:20.

34.     At trial, United argued repeatedly that the Trustee must submit documentary medical records to support each claim included in his damages model. The Court rejects that assertion and finds the Trustee has proven by a preponderance of the evidence that the claims comprising Herbers' damages were actually performed for the following reasons.

35.     First, the detailed claims data contained in PTX086 is prima facie evidence that the services reflected in the data set were actually performed. While United would have the Court find the services were not performed, Dr. Sheinberg's testimony is corroborating. Furthermore, its interrogatory responses outlined above did not identify non-performance of the services as a reason for its claim denials. If United's review and investigation of the claims at issue revealed any basis for concluding the services were not performed, it could and should have identified that in its discovery responses. The fact that United did not do so provides additional support for the Court's finding that the services were performed.

## CONCLUSIONS OF LAW

1.     The Court has jurisdiction, and this matter is a core proceeding over which this Court can enter a final order.

2. The Trustee has consented to entry of a final order by this Court.

3. Venue in this Court is proper pursuant to 28 U.S.C. § 1409.

### ***Breach of Contract***

4. The FPA sets out United's fundamental contractual payment obligation in Sections 5.1 and 6.4 by requiring United to pay for "Covered Services":

> **5.1** **Payment of Claims.** As described in further detail in Article VI of this Agreement, Payers will pay Facility for rendering Covered Services to Customers. United will make its Payment Policies

> **6.4** **Payment of claims.** Payer will pay claims for Covered Services as further described in the applicable Payment Appendix to this Agreement and in accordance with Payment Policies.

5. Section 1.2 in turn defines payable "Covered Services" broadly to include **"a health care service or product for which a Customer is entitled to receive coverage from a Payer, pursuant to the terms of the Customer's Benefit Plan with that Payer"**:

> **1.2** **Covered Service** is a health care service or product for which a Customer is entitled to receive coverage from a Payer, pursuant to the terms of the Customer's Benefit Plan with that Payer.

6. The FPA is straightforward in requiring United to pay for covered services, including the lab services at issue in this case, and to comply with Texas' laws for prompt payment of claims. PTX061 sec. 5.5 ("United will comply with all applicable regulatory requirements, including . . . those relating to prompt payment of claims . . . ."). The Appendix that is referenced in Section 6.4 incorporates the same definition of Covered Services and also makes clear that services covered by the contract include outpatient services and laboratory services. PTX061 at UNITEDHEALTH0001768.

7. The FPA did not expressly restrict where services could be rendered and explicitly allowed the usage of subcontractors. PTX061 sec. 4.5. The FPA could have expressly limited laboratory or outpatient claims to those performed on Little River's premises, but it did not. In

4677952.v1

contrast, the FPA's definition of "Observation" limited services to those rendered "on the Facility's premises."  PTX061, All Payer Appendix, sec. 1.   Similarly, the FPA could have expressly defined and excluded "non-patients"—as subsequent United policies did—but the FPA did not.

8.     Further, Section 3.1 is not properly read as limiting the geographic scope of Little River's laboratory billing.  Whether services were provided at Little River under Section 3.1 must be understood in conjunction with these subcontractor provisions.

9.     This is reinforced by United's Laboratory Services Policy in place during 2016-2018 which specifically allowed for reference laboratory billing by facilities.  DTX011 at UNITEDHEALTH0011962 ("Laboratory Services Performed in a Facility Setting").  That policy stated that claims submitted by a reference laboratory with a facility as the place of service "are reimbursable to the facility."  *Id.*

10.     To the extent there is any ambiguity in the FPA about whether billing for laboratory testing performed by reference labs on Little River patients was allowed, industry practice and common meaning of the terms subcontractor supports Little River's interpretation.  6.12.2024 RR 28:7-29:2, 30:3-16, 50:1-51:5.

11.     Little River's laboratory claims for off-campus United members who were registered as outpatients of the hospital and from whom a Little River employed phlebotomist drew the specimen reflect outpatient and covered services under the FPA.  The FPA did not require laboratory specimens to be procured from patients who were physically present at the Rockdale hospital.  By placing hospital-employed phlebotomists in physicians' offices to register patients as Little River hospital outpatients and physically drawing and processing the patients' specimens, the patients became covered "outpatients" of the hospital under the FPA's terms.  The third-party

reference labs, like Boston Heart and True Health, served as permissible subcontractors.

12.     Little River's billing for laboratory testing that was performed by third-party reference labs was in compliance with the FPA.

13.     United's reliance on various "Physician, Health Care Professional, Facility, and Ancillary Provider Administrative Guides For Commercial and Medicare Advantage Products" to alter those obligations is unsupported by the pertinent contract language and is contrary to Texas law.  *E.g.*, DTX 457.  The administrative guides were not attached to or effectively incorporated by reference into the FPA as "Protocols."  *See* PTX061 secs. 1.7, 4.4; *One Beacon Insurance Co. v. Crowley Marine Services, Inc.*, 648 F.3d 258, 268 (5th Cir. 20011) ("'clear reference to the document and describes it in such terms that its identity may be ascertained beyond doubt'") (quoting 11 Williston on Contracts § 30:25 (4th ed. 1999)).  Notably, not even the person responsible for the FPA at United, Chad Martino, knew how many thousands of policies United has that it considers Protocols.  6.13.25 RR 471:5-472:4.

14.     Even if the provisions of the Administrative Guide under the subheading "Pass-through billing/CLIA requirements/reimbursement policy" were relevant, they applied only to a "physician, practitioner, or medical group," not hospital facilities like Little River.  *Mission Toxicology, LLC v. Unitedhealthcare Ins. Co.*, 499 F. Supp. 3d 350, 365 (W.D. Tex. 2020) ("The 2016 guide, furthermore, merely prohibited any 'physician, practitioner or medical group' from billing for services they did not provide; it did not include hospitals.").  This means that while the Administrative Guide's prohibition on "pass-through billing" restricted individual providers, it did not prohibit a hospital from billing for reference lab services.  *Id.*; *see also* DTX 457 at UNITEDHEALTH0015683 ("***If you are a physician, practitioner, or medical group***, you must only bill for services that you or your staff perform.") (emphases added).

12

15.     Additionally, the doctrine of collateral estoppel precludes United's interpretation of the FPA in this case, because it actually litigated that interpretation of its form contract provisions that were identical in relevant respects, and the interpretation it advanced there was resolved against it in a final adjudication in *Mission Toxicology*.

16.     Between 2016 and 2018, Little River performed covered services that United underpaid or failed to pay at the contractually agreed rates for commercial claims, causing damages to Little River in the amount United should have paid under the FPA's terms.

17.     The laboratory services at issue were performed upon orders made by physicians or other qualified providers, the specimens were drawn from United members, the testing was performed on the specimens, and the results were provided to the ordering providers and patients. *E.g.,* PTX126.

18.     United was obligated by the FPA (and Texas law) to make prompt payment to Little River in the amount of ▮ of billed charges on the disputed lab services at issue in this case until the Contract Amendment.     PTX061 at UNITEDHEALTH0001768.     After the Contract Amendment in 2017, United was obligated to make prompt payment to Little River pursuant to the new fee schedule.  PTX065 at LRH_United0110125.

***United's Defenses to Breach of Contract***

19.     Appeal of claim denials is not a condition precedent for bringing suit.  *See Solar Applications Eng'g, Inc. v. T.A. Operating Corp.*, 327 S.W.3d 104, 109 (Tex. 2010).  Even if appeals were a condition precedent, the Trustee has shown that any appeals were futile based on United's articulated strategy to avoid the payment of all laboratory claims by Little River.

20.     United failed to plead with particularity that any cited provision of the FPA requiring an "appeal" was a condition precedent to bringing suit, and therefore it is precluded from

4677952.v1

relying on that defense in this matter. *See Pike Co., Inc. v. Universal Concrete Products, Inc.*, 616 F. Supp. 3d 253, 259 (W.D.N.Y. 2022). United likewise failed to identify failure to comply with timely filing requirements and failure to submit sufficient medical records as conditions precedent to its asserted claims. *See Norton v. Assisted Living Concepts, Inc.*, 786 F. Supp. 2d 1173, 1183 (E.D. Tex. 2011) ("The court also notes that ALC's assertion fails to meet the heightened pleading standard under FRCP 9(c), which states, '[w]hen denying that a condition precedent has occurred or been performed, a party must do so with particularity.' Rather than identifying the particular failures of conditions precedent, ALC merely states that Norton's claim 'fails in whole or in part because Plaintiff failed to meet all administrative prerequisites to bringing this suit.'"); *Smith v. Wal-Mart Stores*, 2006 WL 2711468, at *7 (N.D. Cal. 2006) ("The Court finds that Defendant has failed to satisfy the standards of Rule 9(c) with its general statement that Plaintiffs' claim is 'barred to the extent they failed to fulfill any contractual conditions precedent.'"); *Evaluation Systems, Inc. v. Aetna Life Ins. Co.*, 555 F. Supp. 116 (N.D. Ill. 1982) ("The life insurer's general denial to an allegation that the beneficiary complied with every condition was insufficient and was stricken, because the plaintiff beneficiary was entitled to be apprised specifically and with particularity as to whether the insurer claimed any other deficiencies in the beneficiary's performance under the policy.").

21. The Trustee's satisfaction of these conditions precedent is therefore deemed admitted. *See* Wright & Miller, 5A FED. PRAC. & PROC. CIV. § 1304 (4th ed.) ("Because under Federal Rule of Civil Procedure 8(b)(6) allegations that are not properly denied are deemed admitted, if a defendant fails to offer a particularized denial in the answer, subsequent attempts to controvert allegations pertaining conditions precedent should be treated as ineffective unless done through an amended pleading.").

14

22.     United did not seek leave to amend its pleadings to add these required denials, but the Court would deny leave even if it had. *See Highland Capital Mgmt., L.P. v. Bank of Am., Nat. Ass'n*, No. 3:10-CV-1632-L, 2013 WL 2256230, at *7 (N.D. Tex. May 23, 2013) ("Given the contentious nature of the conditions precedent issue and extensive analysis in the parties' submissions before the January 18, 2011 pleading amendment deadline, the court has difficulty understanding why BANA could not have previously pled, or sought leave before now to plead with particularity its position that the occurrence or performance of conditions precedent necessary for the formation of an agreement did not occur and was not excused."); *see also RLI Ins. Co. v. Craig Wallace Constr., LLC*, No. 5:11-CV-134-C, 2012 WL 13028092, at *3 (N.D. Tex. June 8, 2012) (holding defendants were precluded from denying conditions precedent in responding to a summary judgment motion where they had not timely denied them in pleadings pursuant to Rule 9(c)).

23.     United also failed to prove prior material breaches that would excuse United's performance.  The fact that United continued performance under the contract—and eventually signed a new contract—even after it was on notice of Little River's use of offsite reference labs demonstrates: (i) that the FPA permitted the practice; and (2) was not material even if it could be considered a breach.  Relatedly, United's election to continue exchanging contractual performance with Little River after it became aware of the alleged material breaches precludes it from now claiming it was excused from its payment obligations.  *Nguyen v. Fantasias Café, Inc.*, No. 11-18-0063-CV, 2018 WL 3849079, at *3 (Tex. App.—Houston [1st Dist.] Aug. 14, 2018, no pet.) (mem. op.); *Eco Built, Inc. v. Lufus*, No. 03-08-00427-CV, 2010 WL 3629821, at *6 (Tex. App.—Austin Sept. 17, 2010, no pet.) (mem. op.); *Gupta v. E. Idaho Tumor Inst., Inc.*, 140 S.W.3d 747, 756-57 n.7 (Tex. App.—Houston [14th Dist.] 2004, pet. denied) ("If the party continues performance, it

15

obligates itself to fully perform."). The testimony at trial confirmed that United chose to continue doing business with Little River and avoided upending their contractual relationship because it was important to United to have Little River as a service provider in its network. This same evidence shows that even if United's interpretation of the FPA were correct, United waived and/or ratified Little River's billing practices.

24.     United failed to plead with particularity that any other cited provision of the FPA allegedly breached was a condition precedent to bringing suit, and therefore it is precluded from relying on that defense in this matter. *See Pike Co., Inc. v. Universal Concrete Products, Inc.*, 616 F. Supp. 3d 253, 259 (W.D.N.Y. 2022).

25.     Any coding errors or misapplication of modifiers does not alleviate United's payment obligations.

26.     The FPA did not make compliance with the anti-kickback statute a condition of payment by the generic statement that performance of the agreement would not violate "applicable law." PTX061 sec. 2.1(iii). The FPA could have expressly referenced the anti-kickback statute by name or citation in Section 2.1, but it did not. For example, in the FPA's attached regulatory appendices for government programs, the FPA makes specific reference to the anti-kickback statute. *See* PTX061, Medicaid and CHIP Program Regulatory Requirements Appendix sec. 3.5; PTX061, Medicare Advantage Regulatory Requirements Appendix sec. 3.6; *see also* 6.12.24 RR 84:9-85:10 (explaining that industry practice is to explicitly cite a statute by citation to condition payment of a claim on compliance with specific laws).

27.     The provisions related to kickbacks in the administrative guides were not incorporated into the FPA and did not alleviate United's payment obligations. But even if the administrative guides created a binding obligation, the subsection United relies on is limited in

16

applicability to "all participating physicians and health care professionals," not hospital facilities like Little River.

28.  The provisions in the administrative guides related to kickbacks also do not establish nonpayment of claims as a remedy for their breach. Instead, even if those provisions were part of the contract, and even if they were breached, United's remedy only was to move Little River to a decreased fee schedule or terminate the FPA. Until the FPA was amended or terminated, United was obligated to continue making payment to Little River in the amounts due under the 2014 FPA terms for so long as services were rendered.

### *Breach of Contract Damages*

29.  United breached its contract with Little River by failing to pay for laboratory services provided to United members in the amount of **$3,954,071.94**. Specifically, during 2016-2018, United failed to pay **$2,959,938.94** in valid laboratory claims associated with the code [UP] and **$994,133** associated with the combination of "fraud, waste, and abuse codes":

| Adj Group / Code* | Claim Count | Shortage Amt |
|---|---|---|
| [7Y] | 140 | $99,038 |
| [7Y] & [B5] | 51 | $288,874 |
| [7Y] & [B6] | 263 | $211,770 |
| [7Y] & [HP] | 126 | $83,292 |
| [7Y] & [HS] | 32 | $19,204 |
| [7Y] & [HU] | 137 | $135,423 |
| [7Y] & [HW] | 52 | $21,364 |
| [7Y] & [B6] & [HU] | 105 | $127,878 |
| [7Y] & [HU] & [HW] | 14 | $7,290 |
| Total | 920 | $994,133 |

PTX086; PTX116; PTX118.

### *Texas Prompt Pay Laws*

30.  The Texas Insurance Code contains detailed requirements for the proper submission of eligible healthcare claims and their subsequent processing by insurance companies. Tex. Ins. Code § 843.336 et seq. (for HMOs); Tex. Ins. Code § 1301.101 et seq. (for PPOs)

4677952.v1

(collectively the "Texas Prompt Pay Laws"). The Texas Prompt Pay Laws statutory and regulatory requirements are non-waivable.

31. Under the Prompt Pay Laws, insurers must pay, deny with written notice, or partially pay and partially deny electronic clean claims within 30 days of receipt. Tex. Ins. Code § 1301.103, § 843.338.

32. The claims Little River submitted to United were clean claims within the meaning of the Texas Prompt Pay Laws. Tex. Ins. Code §§ 843.336(c); 1301.131(b), (d); *see also* 28 TAC § 21.2803.

33. If the insurer needs additional information to determine whether it is liable for a claim, such as a patient's medical records, it may request additional information from the treating provider within 30 days of receiving the claim and must act on the claim within 15 days of receiving the information. 28 TAC §§ 21.2804.

34. If the claim is not properly adjudicated within the later of 30 days of filing or 15 days of the insurer's receipt of medical records, the insurer must pay statutory penalties. Tex. Ins. Code §§ 843.342, 1301.137; 28 TAC §§ 21.2815.

35. An insurer that wishes to audit a claim must notify the provider in writing and pay the provider 100% of the contracted rate. 28 TAC §§ 21.2802, 21.2807; Tex. Ins. Code §§ 843.338, 843.346, 1301.103. Pursuant to the Prompt Payment Laws audit provisions, the insurer has 180 days to investigate the claim. Tex. Ins. Code §§ 843.340, 1301.105. Pre-payment review is a form of audit. United failed to follow the audit provisions of Texas Prompt Pay Laws.

36. Little River may only recover under the Texas Prompt Payment Laws for fully insured claims (i.e., not self-funded plans). *See* Tex. Ins. Code § 1301.0041.

37. As a result of United's failure to pay Little River's claims in accordance with the

services provided to United Members, Little River is entitled to penalties and interest as set forth in Tex. Ins. Code §§ 843.342 and 1301.137 and 28 TAC § 21.2815 and attorneys' fees and costs pursuant to Tex. Ins. Code §§ 843.343, 1301.108 and 28 Tex. Ins. Code § 21.2817.

38.     United's adjudication of Little River's claims violated the Texas Prompt Pay Laws, for which it is liable for penalties and interest in the amount of **$1,693,330.53**. This total consists of:

| Adj Group / Code* | Damage Amt | Shortage Interest Amt | Damage Interest Amt | Prompt Pay Act |
|---|---|---|---|---|
| [UP] | $12,269.40 | $1,096,548.13 | $0 | $1,108,817.53 |

| Adj Group / Code* | Damage Amt | Shortage Interest Amt | Damage Interest Amt | Prompt Pay Act |
|---|---|---|---|---|
| [7Y] | $56,315 | $23,753 | $3 | $80,071 |
| [7Y] & [B5] | $0 | $109,954 | $0 | $109,954 |
| [7Y] & [B6] | $32,578 | $37,597 | $2 | $70,177 |
| [7Y] & [HP] | $79,281 | $11,370 | $3 | $90,654 |
| [7Y] & [HS] | $16,911 | $1,885 | $0 | $18,796 |
| [7Y] & [HU] | $149,888 | $17,276 | $5 | $167,169 |
| [7Y] & [HW] | $13,301 | $2,765 | $1 | $16,067 |
| [7Y] & [B6] & [HU] | $18,832 | $10,181 | $0 | $29,013 |
| [7Y] & [HU] & [HW] | $1,611 | $1,001 | $0 | $2,612 |
| Total | $368,717 | $215,782 | $14 | $584,513 |

PTX086; PTX116; PTX118.

39.     The shortage interest amount calculated by Herbers was calculated only through the date of conversion. 06.11.24 RR 64:9-25. Additional prejudgment interest through the date of judgment is also due in the amount of _____.

## *Unfair Claims Settlement Act*

40.     The Trustee has standing to assert these claims as United Members assigned their rights, specifically including the right to pursue remedies necessary in pursuing unpaid claims, under their policies with United to Little River.

19

41.     On numerous occasions, Little River gave notice to United of the claims forming the basis of this cause of action.

42.     United's acts and practices have violated Tex. Ins. Code § 542.058 by not timely paying Little River's claims, as discussed above. United violated this provision of the Texas Insurance Code when it refused to reimburse Little River for services that United did not dispute Little River provided to United Members.

43.     The Trustee is entitled to damages as a direct result of United's violation of Tex. Ins. Code §§ 542.057 and 542.058.

44.     The Trustee is entitled to recover additional statutory damages of 18% of the amount of its damages. Tex. Ins. Code § 542.060(a). This totals _____.

45.     The Trustee is entitled to recover its reasonable and necessary attorneys' fees under Tex. Ins. Code § 542.060.

## *Declaratory Judgment*

46.     Little River and United entered into a valid contract. By law, United was to pay clean claims within forty-five (45) days of receipt of those claims in non-electronic format and thirty (30) days of receipt of those claims that are electronically submitted.

47.     Little River performed its contractual obligations including, but not limited to, providing and making available valuable medical services, including laboratory services, to United Members pursuant to the terms of the Contract.

48.     United breached the FPA by: failing to pay clean claims within the time periods set out in the FPA; failing to provide advance notice before implementing a policy change that resulted in lower payments to providers; improperly denying hundreds of claims; failing to provide required notice before offsetting the amount of the alleged overpayment or erroneous payment against other

20

monies due to Little River; continuing to deny and failing to reimburse Little River for claims submitted by Little River for laboratory services provided to United Members; and failing to produce the relevant documentation or state the basis regarding United's denial of the laboratory claims within the time period required under Texas law.

49.     United violated Tex. Ins. Code §§ 843.321 and 1301.136(a)(2) by failing to provide Little River with documentation supporting any United change of payment methodology with respect to hospital usage of reference laboratories within 30 days after receipt of Little River's request.

50.     United violated Texas' Prompt Pay Statute, Tex. Ins. Code §§ 843.336 et seq. and 1301.101 et seq. by failing to pay clean claims within forty-five (45) days of receipt of those claims in non-electronic format and thirty (30) days of receipt of those claims that are electronically submitted.

51.     United engaged in unfair claim settlement practices in violation of Tex. Ins. Code § 542.058 by not timely paying Little River's claims after wrongfully rejecting these claims and by refusing to reimburse Little River for services that United did not dispute Little River provided.

### *United's Proofs of Claim*

52.     The Trustee's objection to United's Proofs of Claim in this matter is sustained and United's claims are disallowed in their entirety.  The Trustee rebutted United's claim by establishing that reference laboratory billing was permissible under the FPA and that the FPA did not contain any provision that made claims not payable due to kickbacks.

53.     Further, United failed to meet its ultimate burden and prove its claim by a preponderance of the evidence.  *In re Square 67 Ltd. P'ship*, No. 12-31870-HDH-11, 2012 WL 5842672, at *2 (Bankr. N.D. Tex. Nov. 19, 2012).  United conducted no analysis of its alleged

4677952.v1

damages, nor did it tie such damages to the amount included in its proof of claim.  Instead, the amount of the proof of claim was simply the sum of all the United claims data.  6.14.24 970:17-971:19.

### *Attorneys' Fees*

54.    The Trustee is entitled to an award of attorneys' fees in an amount to be determined post-judgment pursuant to the Local Bankruptcy Rules of the Western District of Texas.

Respectfully submitted,

 */s/   Matthew Powers*
**GRAVES, DOUGHERTY, HEARON & MOODY, P.C.**
Matthew C. Powers (TX Bar No. 24046650)
William G. Christian (TX Bar No. 00793505)
Marianne W. Nitsch (TX Bar No. 24098182)
Brian T. Cumings (TX Bar No. 24082882)
401 Congress Avenue, Suite 2700
Austin, TX  78701
Telephone: (512) 480-5626
Facsimile: (512) 536-9926
Email:  bcumings@gdhm.com
Email: mpowers@gdhm.com
Email: wchristian@gdhm.com
Email: mnitsch@gdhm.com
*Attorneys for James Studensky, Chapter 7 Trustee*

### CERTIFICATE OF SERVICE

I hereby certify that on July 26, 2024, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system and sent the filing via email to the following counsel of record:

Eric S. Goldstein
Shipman & Goodwin LLP
One Constitution Plaza

22

Hartford, CT 06103
(860) 251-5000
egoldstein@goodwin.com

Jeffrey S. Gleason
Jamie R. Kurtz
Gregory S. Voshell
Marcus A. Guith
Kyle D. Nelson
Robins Kaplan LLP
800 LaSalle Ave., Suite 2800
Minneapolis, MN 55402
(612) 349-8500
jgleason@robinskaplan.com
jkurtz@robinskaplan.com
gvoshell@robinskaplan.com
mguith@robinskaplan.com
knelson@robinskaplan.com

*Counsel for UnitedHealthcare Insurance Company,*
*United Healthcare of Texas, Inc., UnitedHealthcare*
*Benefits of Texas, Inc., and UnitedHealthcare*
*Community Plan of Texas, L.L.C.*

*/s/ Marianne Nitsch*
Marianne W. Nitsch

4677952.v1